UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                       )
**DARYL STEVENS,**                     )
                                       )
        **Plaintiff,**      )
                                       )
    v.                               )    Civil Action No. 11-1161 (RCL)
                                       )
**SODEXO, INC.,** *et al.***,**        )
                                       )
        **Defendants.**     )
_____ )

## MEMORANDUM OPINION

This case, removed from the Superior Court of the District of Columbia in June 2011, involves an employee suing a former employer and former supervisor for wrongful termination and identity theft, among other claims. Before the Court are defendant Sodexo, Inc.'s Motion [5] to Dismiss[1], plaintiff's Motion [12] for Permission to File a Sur-Reply, and plaintiff's Motion [17] to Convert Defendant's Motion to Dismiss. Upon consideration of the motions, oppositions, replies, the entire record in this case, and the applicable law, the Court will grant Sodexo's Motion [5] to Dismiss, grant plaintiff's Motion [12] for Permission to File a Sur-Reply, and deny plaintiff's Motion [17] to Convert Defendant's Motion to Dismiss.

**I.     BACKGROUND**

According to the factual allegations in the Complaint, the events giving rise to this lawsuit began in May 2009, when plaintiff Daryl Stevens was a "contract full[-]time employee" for Sodexo, Inc. Compl. [1-1] 4 ¶4, June 23, 2011. An attachment to Stevens' Complaint indicates that he worked as a bus driver, with occasional janitorial duties. *Id.* at Ex. 1. His immediate supervisors in May 2009 were Johnae Hairston and defendant Lavell Rollins. *Id.* at 4

---

[1] Defendant Lavell Rollins has not filed a motion to dismiss, although he answered the Complaint in December 2011. *See* Rollins' Answer [14] 1, Dec. 14, 2011.

¶4.  In an internal grievance authored by Stevens and dated May 4, 2009, he expressed concerns to Sodexo's Office of Human Resources about his treatment at the hands of Hairston, whom he said was a "thorn in his side."  *Id.* at Ex. 1.  He complained that she verbally abused him, disrespected him, and made his life more difficult.  *Id.*  He also complained of a specific incident, in April 2009, when she falsely accused him of not cleaning the "Science Lab."  *Id.*  While Stevens alleges in his Complaint that this grievance was directed at *both* Hairston and defendant Rollins, it only alleges misconduct on the part of Hairston.  *See id.*  The Complaint also describes the grievance as reporting "unfair labor practices" and "threats of violence" against Stevens, but (again) it does nothing of the sort.  *See id.*

After this grievance was submitted to Sodexo, Stevens met with Rollins and Hairston, after which (Stevens alleges) they "became increasingly hostile" to him.  *Id.* at 2 ¶8–9.  This culminated in September 2009, when Rollins terminated Stevens' employment with Sodexo.  *Id.* at 2 ¶11.  However, Stevens was again hired by Sodexo that summer as a "full[-]time [p]ermanent employee with full employee benefits."  *Id.* at 2 ¶¶11(b), 14–15.  But he was fired again, in August 2010, allegedly for insubordination.  *Id.*

The next relevant incident occurred sometime in the spring of 2011, when Stevens prepared to file his taxes.  While looking over his paperwork, he allegedly learned that Sodexo payroll checks had continued to be issued in his name after he was terminated.  *Id.* at 3 ¶18.  He also allegedly learned that these checks had been cashed by defendant Rollins.  *Id.*  Stevens' theory is that Rollins obtained the checks and impersonated Stevens at a local bank in order to cash them.  *Id.* at 4 ¶20.  Stevens further alleges that Rollins used the proceeds from his fraudulent scheme "for his benefit, and the benefit of others," without Stevens' knowledge or consent.  *Id.*  Shortly after he discovered the fraud, Stevens contacted various Sodexo employees,

including an investigator, and he cooperated with the subsequent investigation. *Id.* at 4 ¶21. The Complaint doesn't say what happened during this investigation or what its results were.

On June 6, 2011, Stevens sued Sodexo, Inc., "Affiliated Companies," and Lavell Rollins in the Superior Court of the District of Columbia. Compl. [1-1] 1. That lawsuit was removed to this Court[2] later that month based on diversity of citizenship. Notice of Removal [1] 1, June 23, 2011. Stevens' Complaint (which is not brought *pro se*) is—to put it charitably—an almost complete mess, with misnumbered paragraphs and numerous misspelled words (and headings). The Complaint fails to separately number individual claims, is full of ambiguity, and contains several jarring inconsistencies regarding facts of great importance to Stevens' claims.

A careful and liberal interpretation of the Complaint reveals the following: "Count 1" alleges that Sodexo breached its employment contract with him when it terminated him in September 2009 and August 2010. *Id.* at 5. Within "Count 1," Stevens also brings claims for wrongful termination against Sodexo based on the same conduct. "Count 2" of his Complaint is for negligent hiring, supervision, and retention against Sodexo. *Id.* at 6. "Count 3" brings various claims (fraud, forgery, intentional infliction of emotional distress, identity theft, and misrepresentation) against Rollins only. *Id.* at 9. Finally, "Count 4," which is difficult to understand, alleges, *inter alia*, that Sodexo and Rollins are "jointly and severally" liable for fraud, forgery, and identity theft. *Id.* at 10 ¶46.

In June 2011, Sodexo moved to dismiss Stevens' Complaint as against Sodexo, Inc. and "Affiliated Companies," pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Def. Sodexo's Mot. Dismiss [5] 1, June 28, 2011. Following Sodexo's filing of a Reply to Stevens' Opposition to Sodexo's Motion to Dismiss in July 2011, Stevens filed a Motion for Permission

---

[2] This case was reassigned by consent from the Honorable Beryl A. Howell to this Court in February 2012. Reassignment [21] 1, Feb. 3, 2012.

to File a Sur-Reply. Pl.'s Mot. Permission [12] 1, July 26, 2011. Then, in November 2011, with Sodexo's Motion to Dismiss still pending, Stevens filed another motion, this time seeking to "convert" Sodexo's Motion to Dismiss into a motion for summary judgment—"with limited discovery"—brought under Rule 56 of the Federal Rules of Civil Procedure. Pl.'s Mot. Convert [17] 1, Nov. 27, 2011.

## II.     LEGAL STANDARD

A motion to dismiss is appropriate when a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To overcome this hurdle, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). The Court must "accept as true all of the factual allegations contained in the complaint," *Atherton v. District of Columbia*, 567 F.3d 672, 681 (D.C. Cir. 2009), and grant a plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

However, the Court may not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Id.* While a complaint does not need to contain detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A complaint that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]" devoid of 'further factual enhancement.'" *Id.* (citations omitted). In other words, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950; *see also Atherton*, 567 F.3d at 681.

### III.    SODEXO'S MOTION [5] TO DISMISS

#### A.  Count 1

##### 1.  Breach of Contract

The Court finds that Stevens' Complaint fails to state a claim for breach of contract, and therefore both of his breach of contract claims in Count 1 against Sodexo will be dismissed.

As is well known, to prevail on a breach of contract claim, a plaintiff must prove (1) a valid contract between the parties, (2) an obligation or duty arising from that contract, (3) a breach of that obligation or duty, and (4) damages caused by that breach. *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009).  In the District of Columbia, employment is presumed to be terminable at will by either party at any time, *Casco Marina Dev., L.L.C. v. District of Columbia Redevelopment Land Agency*, 834 A.2d 77, 83 (D.C. 2003), and absent allegations that the parties intended that termination be subject to specific preconditions, a plaintiff has no remedy in contract law.  *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 69–70 (D.D.C. 2005).

Stevens' Complaint does not contain factual allegations that, taken as true, would permit the Court to infer that Sodexo is liable for breach of an employment contract.  *See Iqbal*, 129 S. Ct. at 1949.  Apart from the "naked assertion," devoid of "further factual enhancement," *Twombly*, 550 U.S. at 557, that he was a "*contract* full[-]time employee," Compl. [1-1] 2 ¶4 (emphasis added), Stevens fails to identify any written employment agreement, or even any basis for inferring a tacit agreement, to meet the requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure as applied to his claims for breach of contract.  *See Twombly*, 550 U.S. at 557.  Nor does Stevens indicate what any of the specific terms of that alleged contract might have been such that Sodexo's actions could constitute a breach of its contractual obligations.  In sum, stripped away of its conclusory allegations, Stevens' Complaint fails to present sufficient factual

allegations with respect to two essential elements of his breach of contract claims. Accordingly, those claims in Count 1 against Sodexo will be dismissed.

### 2. Wrongful Termination

Stevens also brings, within the ambit of Count 1, what he terms "two separate malicious wrongful termination" claims, presumably based upon his firings in September 2009 and August 2010. Compl. [1-1] 5. Both wrongful termination claims will be dismissed for failure to state a claim.

A brief summary of the District of Columbia's common law regarding wrongful termination is necessary. While, as is stated above, the general rule in the District of Columbia is that an employer may terminate an at-will employee at any time and for any reason, the District of Columbia Court of Appeals ("DCCA") has recognized a "public policy" exception to that rule. *Adams v. George W. Cochran & Co., Inc.*, 597 A.2d 28, 30 (D.C. 1991). The DCCA held in *Adams* that an employer engages in tortious conduct "when it fires an at-will employee for that employee's refusal to break the law at the employer's direction." *Id.* This public policy exception was originally conceived as "very narrow," *id.* at 34, but courts have subsequently expanded it. *See Carl v. Children's Hosp.*, 702 A.2d 159 (D.C. 1997). In *Carl*, the DCCA allowed for additional public policy "exceptions" beyond that identified in *Adams*, so long as such exceptions are "firmly anchored either in the Constitution or in a statute or regulation which clearly reflects the particular 'public policy' being relied upon." *Id.* at 162 (Terry, J., concurring). The DCCA further stated that courts should "consider seriously," in deciding whether the facts of a given case warrant the creation of another exception, only those arguments "that reflect a clear mandate of public policy—*i.e.*, those that make a clear showing, based on some identifiable policy that has been 'officially declared' in a statute or municipal regulation, or in the Constitution . . . ." *Id.* at 164 (Terry, J., concurring). This policy must arise from a statute

or regulation that does not provide its own remedy. *Carson v. Sim*, 778 F. Supp. 2d 85, 97 (D.D.C. 2011) (citing *Carter v. District of Columbia*, 980 A.2d 1217, 1225 (D.C. 2009)). Furthermore, "there must be a close fit between the policy thus declared and the conduct at issue in the allegedly wrongful termination." *Carl*, 702 A.2d at 164 (Terry, J., concurring). Courts in this Circuit, interpreting the DCCA's decision in *Carl*, have required not only that a plaintiff clearly articulate the applicable public policy, but also show a causal connection between protected activity in which that plaintiff engaged and his or her termination. *See Robinson v. Securitas Servs., Inc.*, No. 11-451, 2011 WL 4936999, at *2 (D.D.C. Oct. 18, 2011); *see also Myers v. Alutiiq Int'l Solutions, LLC*, 811 F. Supp. 2d 261, 267–68 (D.D.C. 2011). That is, the plaintiff "must have been terminated for acting in a protected manner." *Robinson*, 2011 WL 4936999, at *3.

Stevens fails in his Complaint to clearly articulate public policies that might apply to his wrongful termination claims. In fact, his allegations with respect to his wrongful termination claims are identical to those supporting his breach of contract claims, despite the fact that the legal requirements of those claims are substantially different from each other. *See* Compl. [1-1] 5 ¶24–26. While Stevens identifies, in his Opposition, public policies that might save his wrongful termination claims, Pl.'s Opp'n [7] 11–14, July 7, 2011, the Court, in reviewing a motion to dismiss under Rule 12(b)(6), is not permitted to incorporate such statements into the Complaint. *See Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) (stating that a court, in reviewing a motion to dismiss, may only consider "the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice.").

However, even if Stevens had properly articulated public policies in his Complaint that are applicable to his wrongful termination claims, these claims would still have to be dismissed

because the policies he suggests in his Opposition to support them are inadequate bases for a wrongful termination claim under District of Columbia law. First, as to his claim that his 2009 termination constituted wrongful termination, Stevens argues that the applicable public policy is the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 *et seq.*, which prohibits retaliation for engaging in protected activity. Pl.'s Opp'n [7] 12; *see also* D.C. Code § 2-1402.61(b). However, the DCHRA, as Stevens notes, Pl.'s Opp'n [7] 13, provides its own remedial scheme, and therefore cannot serve as the basis for a "policy" supporting a wrongful termination claim. *See Carter*, 980 A.2d at 1225. The same defect is fatal to Stevens' wrongful termination claim as it relates to his 2010 termination. While it is reasonable to infer from his Complaint that the applicable public policy supporting this wrongful termination claim is the District of Columbia's stated opposition to identity theft, as is reflected in its criminal laws, *see, e.g.*, D.C. St. § 22-3227.02(1), the statute embodying that policy has its own criminal enforcement scheme. *See id.* §§ 22-3227.03(a)–(c). As such, this "public policy" cannot serve as the basis for a wrongful termination claim. *See Carter*, 980 A.2d at 1225.

Finally, even assuming that Stevens had clearly articulated public policies that could serve as the bases for his wrongful termination claims, there must also be a "close fit" between these policies and the conduct that led to Stevens' termination. *See Carl*, 702 A.2d at 164 (Terry, J., concurring). As indicated above, according to the law that has developed in this area since the DCCA's decision in *Adams*, wrongful termination claims have been limited to situations where an employer puts an employee between a rock and hard place—namely, between the rock of termination and the hard place of either breaking a law or refraining from some activity promoted by public policy. This case does not fit, either neatly or messily, into this rubric. Here, Stevens was allegedly fired "to provide the means for [Rollins] to steal [Stevens'] identity." Compl. [1-1] 5 ¶29. Nothing that Stevens allegedly refused to do or did is

connected with his termination—*any* Sodexo employee supervised by Rollins would have made a suitable pawn in the alleged identity theft scheme. As such, there is no "fit" between an applicable public policy of the District of Columbia and Stevens' conduct, and so his wrongful termination claims must be dismissed.

In sum, Stevens has failed to state a claim for both breach of contract and wrongful termination, and therefore all of the claims in Count 1 of his Complaint will be dismissed.

### B. Count 2: Negligence

Stevens brings, in Count 2, what appears to be two separate negligence claims. First, he appears to claim that Sodexo was negligent by failing to "[s]afeguard [his] identity," to provide guidelines "for the safe issuance of payroll checks," and to create various procedures related to identity theft. Compl. [1-1] 6 ¶30. Second, he alleges that Sodexo is liable for negligent hiring, supervision, and retention. *Id.* Both claims for negligence will be dismissed.

Regarding his claim that Sodexo is liable for common law negligence by failing to put in place certain identity theft safeguards, Stevens fails to identity any basis in the District of Columbia's common law, or elsewhere, for such duties. Negligence requires Stevens to prove (1) a duty recognized by law, requiring Sodexo to conform to a standard of conduct; (2) a breach of that duty; (3) proximate cause; and (4) actual loss or damages. *Ross v. U.S.*, 591 F. Supp. 2d 48, 52 (D.D.C. 2008). Stevens argues, without reference to any on-point authority, that since identity theft often occurs, and because it is "reasonably foreseeable that payroll checks would be stolen," Sodexo has a duty to its employees to safeguard their identities and establish protocols to that effect. Pl.'s Opp'n [7] ¶44. However, Stevens fails to point to any cases in which courts applying District of Columbia law have held that an employer owes a duty to its employees to "safeguard" their identities or create procedures designed to prevent the theft of employees', or former employees', identities. Accordingly, he has not pled facts establishing that Sodexo has

breached a *recognized* duty owed to its employees with respect to the theft of their identities by third persons.

As to Stevens' claim that Sodexo is liable for negligent hiring, supervision, and retention, that claim will be dismissed for failure to plead facts that would establish that Sodexo knew, or should have known, that any of its employees were incompetent or engaged in criminal activity. Under D.C. law, an employer owes a duty to third persons, based on the conduct of its employees, to use reasonable care to select competent employees and to fire incompetent employees. *Griffin v. Acacia Life Ins. Co.*, 925, A.2d 564, 575 (D.C. 2007). If an employer neglects this duty, and a third person is harmed as a result, the employer may be liable even though the injury was brought about by the willful act of the employee beyond the scope of employment. *Jia Di Feng v. See-Lee Lim*, 786 F. Supp. 2d 96, 106 (D.D.C. 2011). The plaintiff must allege facts showing that the employer knew or should have known that the employee was incompetent, and that the employer, despite this actual or constructive knowledge, failed to adequately supervise the employee. *Id.* at 106.

Apart from buzzwords culled from the relevant law, Stevens' Complaint fails to allege facts suggesting that Sodexo had any knowledge, actual or constructive, of defendant Rollins' improprieties. Stevens alleges that Sodexo "had actual knowledge of its employees' theft and prior history of theft and dishonesty, but failed to take corrective action . . . ." Compl. [1-1] 7 ¶33. He also makes a general allegation that Sodexo knew about its employees' criminal backgrounds, "immoral[ity]," "incompeten[ce]," and "dishonest[y]," but continued to "select, retain[,] and otherwise support" such employees. *Id.* at 7–8 ¶33. However, Stevens does not allege what acts of theft Sodexo knew or should have known about. He does not name the employees with "criminal backgrounds" that Sodexo allegedly, and knowingly, hired, supervised, and retained. Stevens, simply put, fails to allege "why, how or when" Sodexo knew

or should have known that any of its employees, including defendant Rollins, behaved in an incompetent, dishonest, or criminal manner. *See Adams v. Vertex, Inc.*, No. 04-01026, 2007 WL 1020788, at *3 (D.D.C. Mar. 29, 2007); *see also Bond v. U.S. Dep't of Justice*, No. 10-01617, 2011 WL 6046406, at *11 (D.D.C. Dec. 6, 2011). Stevens' bare, conclusory assertions, in the form of unenlightening legal-speak, that Sodexo "knew or should have known" are insufficient to survive Sodexo's Motion to Dismiss. *See Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 284 (D.D.C. 2011) (citing *Iqbal*, 129 S. Ct. at 1949).

In sum, Stevens' negligence claims in Count 2 of his Complaint will be dismissed.

### C.  Count 4: "Joint and Several" Liability for Identity Theft, Fraud, and Forgery

Stevens' "Count Four" alleges that Sodexo is liable for "[i]dentity theft, fraud[,] and forgery" "jointly and severally" with Rollins. Compl. [1-1] 10. However, this claim or claims is or are so poorly pled that it is impossible for Sodexo, or the Court, to determine what Sodexo is alleged to be liable for. Sodexo believes that Stevens is "attempt[ing] to proceed under a respondeat superior theory of liability" for the alleged identity theft, fraud, and forgery committed by Rollins. Def. Sodexo's Mot. Dismiss [5] 6. However, Stevens *also* appears to allege in Count 4 that Sodexo and Rollins "acted in concert" to cause the theft of Stevens' identity, such that Sodexo would be directly liable. *See* Compl. [1-1] 10. To round things out, the remainder of the allegations in Count 4 appear to support another negligence claim against both Sodexo and Rollins, for the same acts pled in the earlier negligence claim in Count 2. *See id.* at 10 ¶ 46–49.

The Court finds that, to the extent that Stevens is alleging in Count 4 that Sodexo is *directly* liable for criminal identity theft, criminal fraud, civil fraud, or forgery, his Complaint fails to state a claim for which relief can be granted. Stevens' bare assertion that Sodexo and Rollins "acted in concert" to steal his identity is insufficient to implicate Sodexo directly in the

scheme.  Furthermore, this assertion that Sodexo was conspiring with one of its own employees to *defraud itself* is implausible on its face, absent further factual enhancement from Stevens. Finally, with respect to the fraud claim or claims in particular, to the extent that he is bringing this claim directly against Sodexo, Stevens hasn't even remotely satisfied the heightened pleading standard for such claims, and so that claim is independently faulty on that ground.  *See* Fed. R. Civ. P. 9(b).

Sodexo suggests that Stevens' intention in Count 4 is to allege that Sodexo is *indirectly* liable for Rollins' torts under a respondeat superior theory.  Def. Sodexo's Mot. Dismiss [5] 6. However, the Court finds that even as interpreted in this manner, Stevens' Complaint fails to allege facts that, assumed to be true, show that Rollins was acting within the scope of his employment when he perpetrated the alleged identity theft.  As is well known, vicarious liability is a legal concept that transfers an agent's liability to his or her principal, and includes the theory of respondeat superior.  *Convit v. Wilson*, 980 A.2d 1104, 1114 (D.C. 2009).  Under the latter theory, an employer may be held liable for the acts of its employees committed within the scope of their employment.  *Penn Cent. Transp. Co. v. Reddick*, 398 A.2d 27, 29 (D.C. 1979). However, "[t]he mere existence of the master and servant relationship is not enough to impose liability on the master.  The boundaries of liability only extend as far as the servant is acting within the scope of his employment."  *Id.*  If an employee acts "in virtue of his employment and in furtherance of its ends," such employee acts within the scope of his employment.  *Id.* (citations omitted).  But if the employee's act is a "marked and decided" "departure from his master's business," then "the employer is no longer responsible" for that employee's "independent trespass" done in the "furtherance of his own ends."  *Id.* (citations omitted).

Stevens brings only conclusory, and conflicting, factual allegations to bear on these legal requirements.  In one place in his Complaint, he alleges that Rollins fired him so he "could

receive [his] payroll checks and negotiate [them] and use the proceeds . . . *for [his] personal use and benefit*." Compl. [1-1] 9 ¶¶41, 42. He alleges elsewhere that Rollins, using false identification bearing Stevens' name, obtained checks in Stevens' name from Sodexo and cashed them "*for his benefit*, and the benefit of others," without indicating who these "others" were or whether they included Sodexo. *Id.* at 4 ¶20. Stevens also states that Rollins was acting "within the scope" of his employment when he took checks in Stevens' name from the company and impersonated Stevens in order to cash them, without explaining how these criminal activities would possibly be within the scope of *any* supervisor's employment. *Id.* at 5 ¶24. While Stevens does elsewhere state, without further explanation, that the theft was for *both* Rollins' personal benefit and for the benefit of Sodexo, *id.* at 5 ¶29, he again fails to present any factual allegations that would explain how it would be in *Sodexo's* benefit for Rollins to steal its money. In short, Stevens' implausible and conflicting allegations are insufficient to provide a basis for respondeat superior liability as against Sodexo for Rollins' alleged torts.

Finally, to the extent that Stevens alleges, in Count 4, that Sodexo was negligent, these allegations merely repeat the same allegations of negligence contained in the earlier negligence claim, which the Court will dismiss for the reasons already stated. *See id.* at 6 ¶28–38. Accordingly, the apparent negligence claim in Count 4 of Stevens' Complaint will be dismissed as well.

To summarize, the Court will dismiss all claims against Sodexo, Inc. The Court will also dismiss all claims against "Affiliated Companies," as referenced in Stevens' Complaint, *id.* at 1, since Stevens has not named or alleged any facts specific to such companies.

## IV.   STEVENS' MOTION [12] FOR PERMISSION TO FILE A SUR-REPLY

Stevens has also filed a Motion for Permission to File a Sur-Reply, to respond to arguments presented in Sodexo's Reply to Stevens' Opposition to Sodexo's Motion to Dismiss.

Pl.'s Mot. Permission [12] 1, July 26, 2011.  Sur-replies are rarely permitted, and only "when a party is 'unable to contest matters presented to the court for the first time' in the last scheduled pleading." *Ben-Kotel v. Howard Univ.*, 319 F.3d 532, 536 (D.C. Cir. 2003).  Although aspects of Stevens' proposed Sur-Reply appear to constitute an attempt to get the last word regarding arguments raised by Sodexo in its initial Motion to Dismiss, *see, e.g.*, Pl.'s Sur-Reply [12-3] ¶¶4–7, which would ordinarily lead the Court to deny a motion for leave, Stevens' proposed Sur-Reply does address certain arguments that Sodexo did not raise until its Reply—specifically, Sodexo's arguments against application of the public policy exception to the employment-at-will rule.  *Id.* ¶15–17.  As such, Stevens' proposed Sur-Reply does not *merely* serve to get the last word, but addresses arguments presented for the first time in the last scheduled brief relating to Sodexo's Motion to Dismiss.  Accordingly, Stevens' Motion for Permission to File a Sur-Reply will be granted.

### V.   STEVENS' MOTION [17] TO CONVERT SODEXO'S MOTION TO DISMISS

After the conclusion of briefing on Sodexo's Motion to Dismiss, Stevens filed an unusual motion seeking to "convert" Sodexo's then-pending Motion to Dismiss into a motion for summary judgment.  Pl.'s Mot. Convert [17] 1, Nov. 27, 2011.  Stevens also seeks, in that Motion, "limited discovery" regarding his current status as an employee at Sodexo.  Pl.'s Mem. [17-1] ¶20.  However, Stevens offers no legal basis for "converting" Sodexo's Motion to Dismiss into a motion for summary judgment, nor does he explain how Sodexo would not be prejudiced thereby.  Nor does Stevens respond to any of Sodexo's arguments against his Motion to Convert, since he filed no reply.  Upon review of Stevens' Motion, the Court finds that it is for all purposes a rehashing of arguments raised in the completed briefing on Sodexo's Motion to Dismiss.  It therefore constitutes a sur-reply for which Stevens has not sought leave.  Accordingly, the Court will deny Steven's Motion to Convert Defendant's Motion to Dismiss.

Furthermore, Stevens' motion for discovery will be denied as moot, since all claims against Sodexo will be dismissed for the reasons already stated.

## VI.  CONCLUSION

For the reasons stated above, the Court will grant Sodexo's Motion [5] to Dismiss, grant plaintiff's Motion [12] for Permission to File a Sur-Reply, and deny plaintiff's Motion [17] to Convert Defendant's Motion to Dismiss.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on March 6, 2012.